Sheldon P. GOREN, Appellant,

v.

Valerie Mann GOREN, Appellee.

No. 16597.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Dec. 18, 1975.

Rehearing Denied Jan. 8, 1976.

Ronald D. Cohen, Houston, for appellant.

William R. Browning, Houston, for appellee.

EVANS, Justice.

A divorce action.

Appellee, Valerie Mann Goren, brought this divorce action against appellant, Dr. Sheldon P. Goren, on the grounds of insupportability. After trial to the court, a divorce was granted and Mrs. Goren was appointed managing conservator of the parties' two and one-half year old son. The trial court made a division of the parties' community estate and ordered Dr. Goren to pay child support payments in the amount of $500.00 per month until the child reached the age of 18 years and all medical expenses incurred on behalf of the child.

In his first two points of error Dr. Goren asserts the trial court abused its discretion in dividing the community estate.

Under the terms of the divorce decree Dr. Goren was awarded tangible community assets valued at approximately $25,000.00, consisting primarily of assets pertaining to his medical practice. Mrs. Goren was awarded personal property valued at $3,500.00 plus $1,000.00 for use in paying her attorney's fees. In order to equalize this division of personal property, the trial court awarded her a judgment for $15,000.00 payable in installments of $3,000.00 per year for five years. Her total award, thus, was $19,500.00. The record does not reflect that any of the property awarded to Dr. Goren was subject to liens. However, the community estate was indebted in the approximate sum of $33,000.00. Of this amount approximately $6,000.00 had been borrowed by Dr. Goren to pay income taxes and the balance, for the most part, represented debts incurred by Dr. Goren in establishing his medical practice. Under the divorce decree, Dr. Goren was required to assume all community debts incurred prior to the filing of the divorce action.

The parties had been married in July 1968. At that time Dr. Goren had just started his sophomore year in medical school. Mrs. Goren was then working full time, making $50.00 per day or approximately $1,000.00 per month. She continued full-time employment up to the time she became pregnant in May 1972, and thereafter continued to work on a part-time basis. From the time of their marriage until the time of her pregnancy, Mrs. Goren's

income constituted the principal support for the family. After the birth of their child in February 1973, Mrs. Goren renewed her work on a part-time basis and from that time to the time of trial she was working two days per week as a dental hygienist. In July 1974, the parties separated and this action was instituted.

At the time of their separation the parties had approximately $7,200.00 in a savings account which was divided between them, $6,000.00 to Mrs. Goren and $1,200.00 to Dr. Goren. Dr. Goren then had approximately $3,000.00 in cash in his business account, so that it appears Mrs. Goren received approximately $1,800.00 more than Dr. Goren of the total cash then on hand. Mrs. Goren testified that she had been required to use a portion of this cash for her support and maintenance during the pendency of the suit and, similarly, Dr. Goren testified he had been required to use the cash in his possession, including the cash surrender value of a $1,000.00 insurance policy, to pay outstanding community obligations. The evidence does not clearly reflect the amount of cash in the hands of the parties, respectively, as of May 27, 1975, the date of the divorce hearing.

It is essentially the argument of Dr. Goren that due to the fact that the divorce was granted on grounds of insupportability, no fault should be attributed to him, and that since the community indebtedness exceeded the aggregate tangible assets of the community, the award to Mrs. Goren of the sum of $15,000.00 payable in $3,000.00 installments over a five year period caused the division of community property to be so disproportionate as to be clearly inequitable and, thus, an abuse of the trial court's discretion.

Appellant relies upon *Hooper v. Hooper*, 403 S.W.2d 215 (Tex.Civ.App., 1966, writ dism'd). In that case the divorce was evidently granted upon conduct of the husband resulting from his excessive use of intoxicants. The trial court awarded the husband 26 Appaloosa horses, two horse stalls and pen, a horse trailer and automobile of a total value of $4,500.00. The wife was awarded all remaining property consisting of a house and lot, household furniture and fixtures, a one-half interest in the husband's sporting goods store, automobile, pick-up truck, life insurance policy and two bank accounts in the total approximate value of $30,500.00. The Court of Civil Appeals reversed and remanded as to the issue of division of property, stating:

". . . The division of property need not be equal so long as it is not so disproportionate as to be inequitable. *Bowling v. Bowling* (Tex.Civ.App.) 373 S.W.2d 829. No case has been cited, and we have found none in which, in our opinion, the division of the property was as unequally divided as was done in this case. Admittedly, appellee was a fine mother to the parties' three sons, the ten year old boy whose custody was awarded to her and the two other boys who were over the age of eighteen at the time of trial. She had not worked out of the home for many years, and is untrained to perform skilled work, but we think appellant's rights must be considered. The sporting goods store, which had been operated by appellant and his partner for several years constituted the major source of the family income. The court's judgment would deprive him of any interest in the most valuable income producing property owned by the parties . . . ."

In the case at bar, as in the case relied upon by appellant, the trial court was entitled to consider not only the tangible assets and liabilities of the community estate but other factors such as the relative conditions, circumstances, capabilities and experience of the parties. *In re Marriage of Jackson*, 506 S.W.2d 261, 266 (Tex.Civ.App.—Amarillo, 1974, writ dism'd). The court was not, of course, required to make an equal division of the community estate. *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950). In making its determination the trial court was justified in considering the parties' respective financial obliga-

tions and future earning capacity, and their probable respective needs for support. *Roberson v. Roberson*, 420 S.W.2d 495 (Tex. Civ.App.—Houston [14th], 1967, writ ref'd, n. r. e.); *Mozisek v. Mozisek*, 365 S.W.2d 669 (Tex.Civ.App.—Ft. Worth, 1963, writ dism'd); *Cooper v. Cooper*, 513 S.W.2d 229 (Tex.Civ.App.—Houston [1st], 1974, no writ). An important factor, if not the most important factor, is the parties' probable respective needs for future support. *Pickitt v. Pickitt*, 401 S.W.2d 846 (Tex.Civ.App. —Tyler, 1966, no writ).

■ The record shows that while Dr. Goren had been practicing for a relatively short period of time, his gross annual earnings from his medical practice for the year 1974 were in the approximate amount of $69,000.00. He estimated that his overhead costs were approximately one-half of his gross earnings and that his net income before taxes approximated $32,000.00 per year. Mrs. Goren testified that during the year 1974 she had earned $6,000.00 from her part-time work as a dental hygienist and that she was required to pay approximately $18.00 per day for child care for each of the days that she worked. The trial court was, of course, entitled to consider the fact that Dr. Goren's earning capability would likely increase as his practice grew and that Mrs. Goren might be unable to obtain a substantial increase in the amount of her earnings.

■ The trial court could also take cognizance of the fact that the assets of Dr. Goren's medical practice were of no particular benefit to Mrs. Goren and were of much greater value in the hands of Dr. Goren. Any disposition of such assets, whether by partition or sale, would have adversely affected Dr. Goren's practice and thus his earning capability. See *Maddox v. Maddox*, 489 S.W.2d 391 (Tex.Civ.App.—Houston [1st], 1973, no writ); *Dorfman v. Dorfman*, 457 S.W.2d 417 (Tex.Civ.App.—Texarkana, 1970, no writ). The community indebtedness which Dr. Goren was required to assume had for the most part been incurred by him in furtherance of his medical practice. The decree did not have the effect of

releasing Mrs. Goren's liability on the indebtedness insofar as the creditors of the community were concerned. The trial court considered it just and fair that Dr. Goren assume the primary obligation for payment of this indebtedness and under the facts and circumstances in the record we cannot say that it abused its discretion in making this order. *Cusack v. Cusack*, 491 S.W.2d 714, 721 (Tex.Civ.App.—Corpus Christi, 1973, writ dism'd); *Mangum v. Mangum*, 184 S.W.2d 338 (Tex.Civ.App.—San Antonio, 1944, no writ); *Hughes v. Hughes*, 259 S.W. 180 (Tex.Civ.App.—Amarillo, 1924, writ dism'd). Dr. Goren does not complain by specific point on this appeal that the trial court abused its discretion in requiring him to pay the community indebtedness. Primarily he attacks the trial court's order requiring him to pay $15,000.00 to Mrs. Goren in installments of $3,000.00 per year over the five year period. The indebtedness is not property nor a charge on property, and if the trial court erred in requiring the husband to assume the primary liability for such indebtedness, the point is not before us. We hold that the record does not establish that the trial court abused its discretion in requiring Dr. Goren to pay the specified sum to Mrs. Goren over the period of time stated in order to achieve an equitable balance in the division of their community estate. *Weaks v. Weaks*, 471 S.W.2d 454 (Tex.Civ.App.—Beaumont, 1971, writ dism'd); *In re Marriage of Jackson*, supra.

■ In his third, fourth and fifth points of error Dr. Goren asserts the trial court awarded an excessive amount of child support to Mrs. Goren, that there is no evidence in support of such award and that it was error to require him to bear most of the financial obligation of supporting said child. Under these points he urges that his wife had lived satisfactorily for ten months pending trial on $350.00 per month child support and that she failed to produce testimony as to the specific needs for the child's support. Additionally, he points to testimony that his wife had, subsequent to the separation, moved from a 2-bedroom apart-

ment into a 3-bedroom apartment. After reviewing the evidence pertaining to these points, we have concluded that the court's award is not excessive, and that there is some evidence which supports the award. Mrs. Goren testified that the sum of $1,200.00 per month was required for the combined support of herself and her child; that her apartment cost was $280.00 per month and that her son was going to be enrolled the following month in a nursery school at a cost of $55.00 per month. In view of the evidence concerning the parties' potential annual earnings, the trial court did not exceed its discretionary authority in awarding child support in the amount of $500.00 per month.

In his sixth and seventh points Dr. Goren contends the trial court abused its discretion in permitting Mrs. Goren to re-open her case after the close of all the evidence to offer evidence in support of her claim for attorney's fees and that the award of attorney's fees is not supported by sufficient evidence. We find the evidence does support the trial court's award and that the trial court did not err in granting permission for the case to be re-opened to present such evidence. *Russell v. Russell*, 443 S.W.2d 569, 571 (Tex.Civ.App.—El Paso, 1969, no writ).

In his last point of error Dr. Goren contends the trial court erred in failing to make additional findings of fact as requested by him. The trial court is not required to make specific findings on every controverted issue but only upon ultimate and controlling issues. *Graham Construction Co. v. Robert H. Pyle, Inc.*, 422 S.W.2d 485, 488 (Tex.Civ.App.—Corpus Christi, 1967, writ ref'd n. r. e.); *Wade v. Taylor*, 228 S.W.2d 922, 925 (Tex.Civ.App.—Amarillo, 1949, no writ). We have reviewed the requested additional findings and hold that the trial court did not err in refusing to make findings thereon.

The judgment of the trial court is affirmed.