In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00179-CR
______________________________


TERRANCE LAMONT LIPSCOMB, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 31137-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Terrance Lamont Lipscomb appeals the trial court's denial of his motion to suppress
evidence. The issues Lipscomb raises in this appeal are identical to those he presents in
Lipscomb v. State, No. 06-04-00175-CR. Since the arguments presented are identical in
each appeal, for the reasons stated in Lipscomb v. State, No. 06-04-00175-CR, we affirm
the trial court's judgment in this case.

 
                                                                           Donald R. Ross,
                                                                           Justice



Date Submitted:      July 12, 2005
Date Decided:         August 31, 2005

Do Not Publish



 a document as the property settlement agreement. James introduced
Respondent's Exhibit 2, which he alleges represents an unsigned agreement of the parties made in
July 1995. The agreement lists in detail all property received by each of the parties. In this
agreement, James was to receive the "Campbell Soup 401[(k)]." Barba countered with a signed
agreement of the parties entered in October 1995, which divided the retirement benefits at Campbell
Soup equally. 
            James argues that the July 1995 "gentleman's agreement" was entered in exchange for his
continuing to pay bills for Barba. He alleges he spent over $130,000.00 over the years in supporting
Barba, paying bills and other things for her. After listing all of the items received by each party,
Respondent's Exhibit 2 states, "BARBA ENTERED HOUSE MONTHS AFTER MOVING OUT
AND TOOK A NUMBER OF SAVINGS BONDS FROM THE SAFE. I TALKED TO THE
INDIVIDUAL THAT WAS WITH HER AT THE TIME. SHE LEFT THINGS DISTURBED IN
THE HOUSE, THAT'S HOW I KNEW SHE HAD BEEN THERE." Further in the document, it is
stated that "EVERYTHING ABOVE WAS AGREED ON AS A 50 / 50 SPLIT BY BOTH
PARTIES. HOWEVER, SHE IS GOING TO DISPUTE THE FULL AMOUNT OF THE 401K
GOING TO JAMES AT THE TIME OF THE SPLIT. . . . . THE 401[(K)] WAS WORTH 108,970
AT THE TIME--IN HIND SIGHT, IT WOULD HAVE BEEN BETTER TO HAVE GIVEN HER
HALF OF IT IN '95."
            Barba introduced the only signed agreement of the parties. During the questioning of Barba,
she stated she had a copy of the signed agreement at her house; the trial court allowed Barba to
retrieve the agreement over the lunch hour. After the recess, Barba produced the October 16, 1995,
signed agreement. Among other things, the agreement states, "James McCarty agrees to Barba
McCarty receiving 50% of his Campbell Soup retirement." Barba referred to this agreement as an
agreement to "live by, married, so I would have insurance." The trial court in its findings of fact and
conclusions of law recognized the October 16, 1995, agreement of the parties. James complains the
trial court did not enforce the oral agreement, which he claims is memorialized by Respondent's
Exhibit 2—the July 1995 document. As the July 1995 document was not signed by the parties, and
since Barba produced another document signed by the parties, which she claimed was their
agreement, the court was within its discretion in recognizing only the signed agreement.
            In dividing the community property, the trial court considered the signed October 16, 1995,
agreement. The trial court found it divided only a portion of the community property, and some
interpretation was required with respect to the Campbell Soup retirement account. Interpretation was
necessary since James actually had a retirement account at Campbell Soup, as well as a 401(k) plan;
the agreement divided the retirement plan equally between the parties, but the 401(k) plan was not
specifically mentioned in the October 16, 1995, agreement. The trial court ordered that each of the
parties receive fifty percent of the Campbell Soup retirement account, and fifty percent of the 401(k)
plan, as of the date the divorce became final.
            The trial court did not err in recognizing the October 16, 1995, agreement and considering 
it in dividing the community property. Most of the property that the parties had acquired was
divided by them before the divorce hearing. The trial court has broad discretion in dividing the
parties' community estate. Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981). In its findings of fact,
the trial court recognized the disparity in the health and earning capacity of the parties and found that
James had a substantial inheritance. We hold that the trial court properly considered the October 16,
1995, agreement, did not err in declining to enforce the June 1995 document as representing an oral
property division, and did not abuse its discretion in its division of the remaining community
property. 
2.         Did the trial court consider evidence not properly admitted?
            At the end of the divorce hearing, the trial court authorized James and Barba to submit a brief
letter argument. James alleges that Barba's letter constituted improperly submitted evidence. He
argues that such document represented a change in the testimony of Barba, which must have been
considered as evidence by the trial court. We disagree.
            Specifically, James urges that, at trial, Barba did not claim any right to the 401(k) account. 
We have carefully reviewed James' references to the record, together with all other parts of the
reporter's record, and do not find any such concession. James further alleges that Barba conceded
that the 401(k) account had been divided by a contractual agreement by the two as a part of a larger
division of assets, citing page 45 of the reporter's record for that proposition. Once again, after
examining page 45 and other parts of the record, we do not find that this allegation is supported. 
Specifically, the reference on page 45 concerns the October 16, 1995, agreement, which divides the
"Campbell Soup retirement" but makes no reference to the 401(k) account. Barba agreed that most
of the provisions of the October 1995 agreement had been completed, but she maintained that the
"401(k) and the retirement was going to be our retirement. Those are both retirements, . . . ." 
Nowhere in the record do we find that Barba conceded she had either signed an agreement or entered
an oral agreement whereby she gave up any right to a 401(k) account. 
            Nothing in the record indicates that the trial court considered the letter written by Barba as
evidence. Counsel for James initially requested permission to submit a letter brief. As Barba was
representing herself, she was also allowed to submit a legal argument by letter. We find no error in
the trial court allowing the parties to submit a letter brief or argument at the close of the evidence. 
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          June 2, 2005
Date Decided:             June 10, 2005