NUMBER 13-06-00250-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JOHN T. WALKER, III, Appellant,


v.
 


TERESA TYNER WALKER, Appellee.

 


On appeal from the 93rd District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Garza


 Memorandum Opinion by Chief Justice Valdez
 


 Appellant, John T. Walker, III ("John"), appeals the portion of the divorce decree
entered by the trial court that divided the marital estate between himself and Teresa
Walker ("Teresa"), appellee. We affirm. 

I. Background 

 John and Teresa were married for 31 years before being divorced on February 7,
2006. Three children were born to their marriage, but at the time of trial only one child,
C.W., was under the age of eighteen. The record shows that their adult daughter, T.W.,
suffers from a severe medical disability. 

 Both parties testified at the divorce hearing. Also, each party submitted an
inventory of assets and a proposed division of the marital estate. 

 The divorce decree granted each party all household furniture, furnishings, fixtures,
goods, art objects, collectibles, appliances, equipment, clothing, jewelry, and other personal
effects in their possession or subject to their sole control; cash or funds in their sole names
or from which they have the sole right to withdraw funds; retirement and pension plans,
and other benefits existing from individual employments; and life insurance policies insuring
their individual lives. 

 John was also awarded a 2002 Chevrolet Suburban, a deer lease, a one-half
interest in a patented product invented by John, a one-half interest in a separate judgment
awarded to John in a different cause, and a $46,996.61 reimbursement which satisfied the
community's interest in insurance checks made payable to both parties but cashed solely
by John. (1) 

 Teresa was awarded the marital home subject to an outstanding mortgage of
$90,961.33. The market value of the home, however, was subject to dispute. Teresa
testified the house was worth $169,000. John testified it was worth $242,000. The divorce
decree also awards Teresa a 2000 Honda Odyssey, a 2002 Kenner boat, a 2000
Fleetwood travel trailer, a utility trailer, a Las Vegas time share, a one-half interest in the
patented product invented by John, and a one-half interest in the judgment awarded to
John in a separate cause.

 The decree orders each party to assume any debt owed under the respective
spouse's name and any balance owed on their vehicles. The home subject to the 
$90,961.33 mortgage, the travel trailer with an $8,000 lien against it, and four credit cards
totaling $27,571.37 were also allocated as Teresa's responsibility. 

 The trial court entered the decree on February 7, 2006. Findings of fact or
conclusions of law were neither requested nor filed in this case. Following the denial of
John's motion for new trial, a timely notice of appeal was filed. 

II. Disproportionate Division of Property 

 In a single issue, John contends that the trial court abused its discretion by awarding
Teresa a disproportionate share of the community estate. 

A. Standard of Review

 The trial court is required to divide the community estate in a manner that is just and
right having due regard for the rights of each party. See Tex. Fam. Code Ann. § 7.001
(Vernon 2006). The trial court has broad discretion in dividing the community estate, and
we presume the trial court exercised its discretion properly. See Murff v. Murff, 615
S.W.2d 696, 698 (Tex. 1981). "The party who complains of the trial court's division of
property must demonstrate from evidence in the record that the division was so unjust that
the trial court abused its discretion." Prague v. Prague, 190 S.W.3d 31, 40-41 (Tex.
App.-Dallas 2005, pet. denied). We consider every reasonable presumption in favor of the
proper exercise of discretion by the trial court in dividing the community estate. Murff, 615
S.W.2d at 699; Prague, 190 S.W.3d at 41. 

B. Analysis

 John begins his argument on appeal with a broad assertion that the trial court
awarded Teresa an "overwhelming portion" of the community estate valued in the range
of $400,000, while only being awarded approximately $66,000 in community assets. John
concludes that the overall community division is a 95/5 split in Teresa's favor. We
disagree.

 The most valuable asset owned by the parties was their marital home. Although the
trial court heard conflicting testimony as to its exact value, it is undisputed that a lien of
$90,961.33 existed on the property. In his brief, John fails to mention this fact, and he
does not offset the estimated values of the home with the outstanding mortgage. Further,
John ignores the fact that Teresa was ordered to take responsibility for the debt of four
credit cards, totaling $27,571.37. These two factors alone decrease the net value of
Teresa's share of the community estate by over $118,532.70. 

 It is clear from the record that the trial court adopted Teresa's proposed division of
the marital estate. According to her recommendation, she was to receive 56.39% of the
community estate, with John receiving 43.61%. As no findings of fact and conclusions of
law were made part of the record, we presume the trial court made all necessary findings
to support the judgment. Boyd v. Boyd, 131 S.W.3d 605, 611 (Tex. App.-Fort Worth
2004, no pet.). Each significant property item, such as the marital home, the household
furniture, and Teresa's employer savings plan, was accorded conflicting values by the
spouses. The trial court does not abuse its discretion in dividing the marital estate by
basing its decision on conflicting evidence. In re Barber, 982 S.W.2d 364, 366 (Tex. 1998)
(orig. proceeding).

 In any event, the division of the community estate is not required to be equal,
Schlueter v. Schlueter, 975 S.W.2d 584, 588 (Tex. 1998), and the court may consider
many factors in making the division. Murff, 615 S.W.2d at 699. In her petition, Teresa
alleged as grounds for divorce cruel treatment, fault in the breakup of the marriage, needs
of the children, community indebtedness and liabilities, and the wasting of community
assets by John.

 The trial court heard testimony that the parties' adult daughter is suffering from a
severe medical disability, and that Teresa has assumed sole responsibility in taking care
of her. Further there was testimony that Teresa has incurred numerous medical
expenditures, and that she had resigned from her job in order to take care of her family. 
John, on the other hand, earns $54,000 per year and, at the time of divorce, was living with
another woman and her two children. Further, that for a significant portion of their
marriage, John was unemployed and contributed very little to the household. Teresa also
testified that while the divorce was pending, John dissipated the value of stocks he owned,
from $46,000 to $2,000. 

 Based on the record, we conclude that even if the trial court's division was
disproportionate in favor of Teresa, any disproportion was justified by additional factors that
were within the court's discretion to consider. John's sole issue on appeal is overruled. 


 III. Conclusion 

 We conclude, therefore, the trial court did not abuse its discretion by awarding a
disproportionate share of the marital estate to Teresa. See Prague, 190 S.W.3d at 40-41. 
We affirm the judgment of the trial court. 




 _______________________

 ROGELIO VALDEZ,

 Chief Justice




Memorandum Opinion delivered and filed 

this the 31st day of January, 2008.

 


 

 

 


1. The insurance checks were issued as a result of damage sustained to the parties' marital home. 
Teresa testified that the insurance company issued five checks made payable to both parties totaling
$46,996.61. Teresa stated that as John received the checks he would forge her signature and cash them. 
She had no idea what he did with the money and could not recall whether repairs were ever made to the
house. John, on the other hand, testified that he used the cashed insurance checks to make the needed
repairs to the home. We further note that both parties placed a zero value on John's patented product and
on his separate judgment.